FILED
CLERK
9/6/2016 1:15 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANGELA MARX and
LAURA MARX DESA,
              Plaintiffs,

      -against-

FRED W. MUNDIE, JR., and
FRED W. MUNDIE, JR., P.A.,
              Defendants.
-----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
15-CV-5253 (ADS)(GRB)

**APPEARANCES:**

**FitzGerald Morris Baker Firth P.C.**
*Attorneys for the Plaintiffs*
16 Pearl Street
P.O. Box 2017
Glens Falls, NY 12801
    By: Joshua David Lindy, Esq., Of Counsel

**Kaufman Dolowich Voluck & Gonzo LLP**
*Attorneys for the Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
    By: Brett A Scher, Esq.
       Andrew Alan Lipkowitz, Esq., Of Counsel

**SPATT, District Judge**.

This is a legal malpractice action arising from the representation of the Plaintiffs Angela Marx and Laura Marx Desa ("Desa" and collectively, the "Plaintiffs") by the Defendant Fred W. Mundie, Jr. ("Mundie") and his law firm, Fred W. Mundie, Jr., P.A. ("Mundie PA" and collectively, the "Defendants") in closing the sale of the Plaintiffs' Florida home.

Presently before the Court is a motion by the Defendants to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. In the alternative, the Defendants move pursuant to 28 U.S.C. §

1

1404(a) ("Section 1404(a)") to transfer this action to a United States District Court in the Middle District of Florida.

For the reasons set forth below, the Court grants the Defendants' Rule 12(b)(2) motion.

# I. BACKGROUND

## A. As to the Facts

The following facts are drawn from the complaint unless otherwise stated.

From at least January 2014 to March 2014, both Plaintiffs primarily resided in Babylon, New York. (See Compl. at ¶¶ 2–3.) Desa is the daughter of Angela Marx. (See id. at ¶ 10.)

Mundie PA is a professional association organized under Florida law that performs legal services. (Mundie's Jan 4, 2016 Decl., Dkt. No. 15 ["Mundie Decl."] at ¶ 2.) Its principal place of business is located in Marco Island, Florida. (Id. at ¶3.) It does not own property outside of Florida; it has never been licensed to do business in New York; it does not retain affiliates, subsidiaries, or employees who conduct or solicit business in New York; it does not maintain bank accounts or telephone listings in New York; it does not accept service of process in New York; it allegedly does not perform legal services in New York or receive income from legal services performed in New York; and it does not advertise its services in New York. (Id. at ¶¶ 6, 8, 10, 12, 14.)

Mundie is an attorney and the principal of Mundie PA. (See id. at ¶ 1.) He is a Florida resident who has never resided or owned property in New York. (Id. at ¶¶ 5, 7.) He has never been licensed to do business or practice law in New York; allegedly does not perform legal services in New York; and does not maintain bank accounts in New York. (Id. at ¶¶ 9, 11, 13.)

Prior to January 9, 2014, the Plaintiffs owned residential property in Naples, Florida (the "Naples Property"). (Compl. at ¶ 7.) The Naples Property was part of larger development known as the Eagle Creek Country Club ("Eagle Creek"). (Id.)

The complaint alleges "upon information and belief" that Eagle Creek has a requirement that anyone who owned property within the development had to maintain a golf membership. (Id. at ¶ 10.) Allegedly, to become a member of Eagle Creek, an individual has to put forth an "initial equity investment" of $35,000. (Id.) As of January 2014, Robert Marx, Angela Marx's husband and Desa's father, maintained a golf membership at Eagle Creek.

On January 9, 2014, the Plaintiffs entered into an agreement (the "Sales Agreement") to sell the Naples Property to Randall Crouss ("Crouss"). (Id. at ¶ 8.) Under the terms of the Agreement, Crouss agreed to pay a total sales price of $310,000 consisting of a $31,000 deposit; $135,000 in financing through a mortgage; and a $144,000 down payment at the closing. (See the Sales Agreement, Compl., Ex. A [the "Sales Agreement"], at ¶ 1, p. 1.) The Sales Agreement set a January 28, 2014 closing date. (Id. at ¶ 2, p. 2.)

Relevant here, the Sales Agreement states, "All Turnkey Furnishings To Remain In the Home." (Id. at ¶ 1, p. 1.) Also relevant here, the Agreement had the following choice of forum provision, "In connection with any litigation concerning this Contract, venue shall be in the counter where the Property is located," which in this case, is Florida. (Id. at Standard O, at p. 10.) Also of importance, in the event that the Plaintiffs failed to perform their obligations, the Agreement authorized Crouss to enforce the Agreement "by a suit for specific performance." (Id. at P, at p. 10.)

The Agreement also contained an addendum (the "Addendum") that gave the Plaintiff an option to provide Crouss with $135,000 in financing toward the purchase price of the Naples

3

Property in exchange for a promissory note and a first mortgage with a principal amount of $135,000; an interest rate of 4% per year; and a loan term of ten years. (Sales Agreement Addendum at ¶ 1, p. 2.) In that regard, the Addendum provides:

> Not later than 5 days after the Effective Date [January 6, 2014], [Crouss] shall furnish such credit, financial, and other information about [Crouss] that is reasonably required by [the Plaintiff] to evaluate [Crouss's] creditworthiness ('Credit Information'). [The Plaintiff] shall notify [Crouss] not later than 10 days after receipt of the Credit Information whether [the Plaintiff] shall provide the financing contemplated by terms of this Addendum . . . .

(Sales Agreement Addendum at ¶ 1, p. 1.) However, if the Plaintiffs failed to notify Crouss within ten days that they declined to offer him the $135,000 in financing, the Addendum stated that the Plaintiff "shall be deemed to have agreed to provide said financing." (Id.)

On January 13, 2014, the Plaintiffs entered into an agreement with the Defendants to represent them at the January 28, 2014 closing (the "Retainer Agreement") in consideration for an $850 flat fee, plus certain costs incurred at the closing. (Compl. at ¶ 15; see also the Retainer Agreement, Compl., Ex. B.)

Subsequently, the Plaintiffs allegedly requested that the Defendants prepare a list of furniture that was to be excluded from the Agreement. (See Compl. at ¶ 17.) However, the Defendants failed to prepare this list. (Id.)

In addition, about January 14, 2014, the Defendants for the first time requested that Crouss provide the Plaintiffs with a credit report. (Id. at ¶ 20.) However, Crouss refused to deliver a credit report to the Plaintiffs because he asserted that under the Sales Agreement, the time period within which the Plaintiffs could request such a report had expired. (Id.) As a result, Crouss contended that the Plaintiffs were obligated to provide him with the $135,000 in financing set forth in the Addendum. (Id.)

4

On January 26, 2014, the Plaintiffs notified Crouss that they would not provide him with the $135,000 in financing and that they intended to terminate the Sales Agreement. (Id. at ¶ 21.)

On February 10, 2014, Crouss filed a complaint against the Plaintiffs in the Circuit Court of Collier County, Florida ("Collier County Court") seeking specific performance of the Sales Agreement, monetary damages, and attorneys' fees (the "Collier County Action"). (Id. at ¶ 22; Collier County Court Compl., Compl., Ex. D.)

On March 3, 2014, the Plaintiffs and Crouss entered in an agreement to settle the Collier County Action. (See Mar. 3, 2014 Settlement Agreement, Compl., Ex. E.) Under the terms of the agreement, the Plaintiffs agreed to provide Crouss with the $135,000 in financing under the terms set forth in the Sales Agreement; to deliver all the required closing documents; and to pay Crouss's attorneys' fees. (See id. at ¶ 2, p. 2.)

Prior to finalizing the settlement agreement, Mundie sent a copy to the Plaintiffs at Angela Marx's residence in Babylon, New York. (See Desa's Feb. 2, 2016 Aff., Dkt. No. 19-2 ["Desa Aff."], at ¶ 13; Marx's Feb. 2, 2016 Aff., Dkt. No. 19-1 ["Marx Aff."], at ¶ 13.) The Plaintiffs reviewed the agreement, signed it, and mailed it back to Mundie's office in Florida. (See id..) The complaint alleges "upon information and belief" that Mundie never filed the finalized agreement with the Collier County Court. (See Compl. at ¶ 27.)

On March 12, 2014, Robert Marx finalized an agreement to assign his interest in a refund of $36,400 from Eagle Creek for his golf membership to Crouss (the "Assignment Agreement"). (See the Assignment Agreement, Compl., Ex. F.) The complaint does not explain what prompted the parties to enter into the Assignment Agreement.

In any event, according to the complaint, prior to the Plaintiffs signing the Assignment Agreement, Mundie gave the Plaintiffs a copy of an Assignment Agreement that did not contain

5

the signature page for Crouss. (See id. at ¶ 31.) The Plaintiffs allege that this omission on the part of Mundie was intended to "deceive [the Plaintiffs] into closing on the property." (Id. at ¶ 32.)

On May 2, 2014, the Plaintiffs retained Jason Vishio, Esq. ("Vishio"), an attorney at the Boatman Law Firm, P.A., to defend them in any further disputes with Crouss arising from the Sales Agreement. (Id. at ¶ 34.) His office was located in Naples, Florida. (See Compl., Ex. G.)

On May 7, 2014, Crouss filed a motion in Collier County Court to enforce the March 3, 2014 Settlement Agreement. (Id. at ¶ 35.) Prior to the closing, the Plaintiffs removed their personal items and furniture from the Naples Property. (Id. at ¶ 38.) In his motion, Crouss sought an order directing the Plaintiffs to return the items that they had taken to the Naples Property. (Id. at ¶ 35.)

On June 11, 2014, Mundie sent Vishio a check for $4,000 purportedly as compensation to the Plaintiffs for his failure to send Crouss a list of furniture to be excluded from the Sales Agreement. (Id. at ¶ 37.)

Subsequently, on an unspecified date, the Plaintiffs entered into a second settlement agreement with Crouss to resolve the furniture dispute. (Id. at ¶ 39.) The complaint alleges "upon information and belief" that as part of this second settlement agreement, the Plaintiffs agreed to forgive the remaining proceeds on the $135,000 loan and to pay Crouss's additional legal expenses. (Id. at ¶¶ 40–41.)

**B. As to the Procedural History**

On September 11, 2015, the Plaintiffs commenced this action on the basis of diversity of citizenship jurisdiction by filing a complaint against the Defendants. The complaint alleges that venue is appropriate "because the real estate contract and settlement agreement that are at the

6

center of this dispute were negotiated via telephone and executed in the Town of Babylon."
(Compl. at ¶ 6.) The Plaintiffs assert common law claims against the Defendants for legal malpractice; intentional misrepresentation; and breach of fiduciary duties. (See id. at ¶¶ 43–65.)

On January 4, 2016, the Defendants moved pursuant to Rules 12(b)(2) to dismiss the complaint for lack of personal jurisdiction, asserting that the Plaintiffs failed to make a *prima facie* case that the Court can exercise jurisdiction over the out-of-state Defendants under New York's long-arm statute. (See the Defs.' Mem. of Law, Dkt. No. 13 [the "Defs.' Mem. of Law"], at 4–6.) They also moved to dismiss the complaint under Rule 12(b)(3), claiming that venue was improper because (i) the substantial acts giving rise to their claims occurred in Florida, not New York; and (ii) the Plaintiffs are bound by the Florida forum selection clause in the Sales Agreement. (Id. at 10–13.) Finally, in the alternative, they moved pursuant to Section 1404 to transfer this action to the Middle District of Florida. (Id. at 15–20.)

On February 2, 2016, the Plaintiffs filed a memorandum in opposition to the Defendants' motion. (See the Pls.' Opp'n Mem. of Law, Dkt. No. 19–3 [the "Pls.' Opp'n Mem. of Law"].) In it, the Plaintiffs contend that they have made a *prima facie* showing that the Defendants "transacted business" in New York within the meaning New York's long-arm statute. (See id. at 5–8.) They also contended that the forum selection clause in the Sales Agreement is not enforceable against them because they are not parties to or beneficiaries of the Sales Agreement. (See id. at 10–12.) However, they did not address the Defendants' contention that venue is improper. They also apparently ignored the Defendants' argument that a transfer pursuant Section 1404 to the Middle District of Florida would be appropriate.

On February 2, 2016, the Defendants filed a reply memorandum in further support of their motion to dismiss, noting among other things, that the Plaintiffs' failed to respond to the

Defendants' arguments regarding venue and the Section 1404 factors.  (See the Defs.' Reply Mem. of Law, Dkt. No. 20 [the "Defs.' Reply Mem. of Law"].)

As explained below, the Court finds that the Plaintiffs have failed to make a *prima facie* showing that this Court has personal jurisdiction over the Defendants under New York's long-arm statute.  Therefore, it does not address the Defendants' Rule 12(b)(3) and Section 1404 arguments.

## II. DISCUSSION

### A. The Legal Standard

"'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'"  Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)).  "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citing Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  "In contrast, when an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence."  Id. (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 n.3 (2d Cir. 1994)).

Here, the lighter *prima facie* standard applies because there has been no discovery in this case, nor has the Court held an evidentiary hearing on the issue of jurisdiction.  See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) ("Where, as here, a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant.").

In making a determination as to whether a plaintiff has met his or her *prima facie* burden, a court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008) (citation omitted). That is, "'[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.'" In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quoting parenthetically Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993)). However, a court "will not draw 'argumentative inferences' in the plaintiff's favor," nor is a court "required to accept as true a legal conclusion couched as a factual allegation." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks and citations omitted).

## B. As to the New York Long-Arm Statute

To determine personal jurisdiction over a non-domicilliary in a diversity of citizenship action, the Court engages in a two-step analysis. First, a court must determine whether jurisdiction comports with the law of the state in which the court sits. See Metro. Life Ins. Co., 84 F.3d at 567 ("'[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.'") (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir.1963) (en banc). Second, "[i]f the long-arm statute permits personal jurisdiction, [the court] analyze[s] whether personal jurisdiction comports with due process protections established under the Constitution." Eades v. Kennedy, PC Law Offices, 799 F.3d

9

161, 168 (2d Cir. 2015) (citing Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010)).

As to the first step, Section 302 of the New York Civil Practice Law and Rules ("Section 302") confers personal jurisdiction over any non-domicilliary who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a).

The Plaintiffs focus their argument in support of personal jurisdiction solely on Section 302(a)(1). (See the Pl.'s Opp'n Mem. of Law at 4–8.) Thus, the Court does not address the other three subdivisions.

As detailed below, the Court finds that the Plaintiffs failed to demonstrate that personal jurisdiction is proper under Section 302(a)(1). Therefore, the Court need not address whether exercising jurisdiction would offend the Due Process clause. See Mayes v. Leipziger, 674 F.2d 178, 185 n.5 (2d Cir. 1982) ("Since we conclude that s 302(a)(1) does not confer jurisdiction over the defendants we need not consider whether if such jurisdiction were conferred it would offend notions of due process.").

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted

must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (quoting McGowan v. Smith, 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)).

With regard to the first prong, "[i]t is well settled that in order for a court to obtain personal jurisdiction over a party under the 'transaction of business' prong of § 302(a)(1), the party need not be physically present in the state at the time of service." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999); see also Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 130 n.2 (2d Cir. 2013) ("The New York Court of Appeals has recognized that an individual, although not physically present in the state, may still be present in the relevant sense through some 'direct and personal involvement' in 'sustained and substantial transaction of business.'") (quoting Parke–Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18, 256 N.E.2d 506, 508, 308 N.Y.S.2d 337, 340 (N.Y. 1970)). "Rather, § 302(a)(1) extends the jurisdiction of New York state courts to any nonresident who has 'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" Bank Brussels Lambert, 171 F.3d at 787 (alteration in original) (quoting Parker-Bernet Galleries, 18, 308 N.Y.S.2d 337, 256 N.E.2d 506).

To determine whether a non-domicilliary has purposefully availed himself of the benefits and privileges of New York law, the court must look to "'the totality of all defendant's contacts with the forum state.'" Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005) (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

The Defendants cite to a number of cases interpreting Section 302(a)(1) in the malpractice context that the Court finds to be analogous to the facts in this case. (See the Defs.' Mem. of Law at 6–8; the Defs.' Reply Mem. of Law at 3–4.) For example, in Mayes v.

Leipziger, *supra*, the plaintiff, a New York resident, brought legal malpractice claims in New York federal court against a California attorney and his firm arising from their representation of the plaintiff in the post-trial proceedings of a California action. 674 F.2d at 178–79. On appeal, the Second Circuit found that the defendants had not transacted business in New York for purposes of Section 302(a)(1) because:

> The defendants never entered New York. They did not initiate the contact with the individuals who were in New York; they were 'solicited' by [the plaintiff's] prior California attorney to take over the representation of [the plaintiff]. The retainer agreement does not even appear to have been 'made' in New York; . . . . Defendants were not to perform their services in New York; they were merely to represent [the plaintiff] in California. There was no activity in New York in which defendants sought to participate.

Id. at 185. The Court of Appeals further noted, "We do not believe that in these circumstances the New York courts would exercise jurisdiction solely on the basis that the defendants, from California, reported to their New York client and sought the wherewithal (i.e., funds, authority, and information) by means of letters and calls to New York to perform their non-New York services." Id. Accordingly, the Second Circuit affirmed the district court's dismissal of the plaintiff's claims for lack of personal jurisdiction. See id.

Similarly, in Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, *supra*, a Belgian bank with offices in New York sued a Puerto Rican law firm for fraud, breach of contract, and breach of fiduciary duty. 171 F.3d at 783. The bank was part of a lending group that was negotiating a credit agreement with two affiliated oil companies that wanted to use one of its oil refineries in Puerto Rico as collateral for the loan. Id. at 782–83. The lending group hired the Puerto Rican firm to issue a legal opinion as to the validity of the security interests that the banks were acquiring from the oil companies. Id. at 782. Subsequent to the closing of the transaction, the oil companies defaulted on the loan and their president was convicted of multiple counts of

bank fraud.  Id. at 783.  The bank brought suit against the Puerto Rican law firm after finding documents suggesting that its lawyers were aware of the fraud.  Id. 783–84.

On appeal, the Second Circuit found that the district court correctly concluded that the plaintiff failed to show that the defendant-law firm had "transacted business" in New York within the meaning Section 302(a)(1).  See id. at 787–89.  It reasoned that the law firm was located in Puerto Rico; performed all of its legal research and writing services in Puerto Rico; and none of its partners "either entered New York or were required to be physically present to perform any of these services."  Id. at 787.  In addition, although the law firm had previously solicited business in New York, the Court of Appeals noted that the plaintiff retained the firm based on a referral, not a solicitation, and thus, the plaintiff's claims did not arise from the defendant's New York solicitations.  See id.

The Circuit Court of Appeals in Lambert acknowledged that the firm "communicated with plaintiff in New York by phone, fax and possibly mail."  Id. at 788.  However, the communications "involved either the negotiation of the original agreement for legal services, editorial comments during the process of preparing the final [defendant] opinion or interactions concerning the closing of the security documents in Puerto Rico."  Id.  Thus, the Court of Appeals found that the defendant did not use the communications to "project itself into New York to participate in any activities localized in the state or to represent the banks during any New York transactions."  Id.

For these reasons, in Lambert, the Second Circuit found that personal jurisdiction over the Puerto Rican law firm was not proper under Section 302(a)(1).  See id. at 788–89; see also Bissonnette v. Podlaski, 138 F. Supp. 3d 616, 624 (S.D.N.Y. 2015) (finding no jurisdiction over an Indiana attorney and his law firm under Section 302(a)(1) because the defendants did not

13

solicit business from the plaintiff in New York; never travelled to New York; the attorney communicated with the plaintiff's representative from Indiana; and the attorney conducted legal research and rendered legal advice from his office in Indiana); Mirman v. Feiner, 900 F. Supp. 2d 305, 314 (E.D.N.Y. 2012) (finding no jurisdiction over a Connecticut attorney under Section 302(a)(2) because the attorney did not perform any of his services in New York; he entered into an agreement with the plaintiff through correspondence from Connecticut; he held the shares at issue in escrow within in Connecticut; and "conducted all of the business related to this action while physically in Connecticut"); Twine v. Levy, 746 F. Supp. 1202, 1205 (E.D.N.Y. 1990) (finding no jurisdiction over a Washington lawyer and law firm under Section 302(a)(1) because the defendants "did not solicit business in New York" but were court appointed attorneys; and finding that "[t]he letters and phone calls from defendant [] to plaintiff were simply necessary communications between defendants and their client").

    Here, it is undisputed that Mundie is a Florida resident, and Mundie PA is a Florida professional association. Although it is not entirely clear how the Plaintiffs were referred to the Defendants, there are no allegations in the complaint, or in the Plaintiffs affidavits, suggesting that Mundie actively solicited the Plaintiffs' business, or that their attorney-client relationship arose out of such solicitations. See Lambert, 171 F.3d at 787 ("Although Fiddler may have solicited some business from New York corporations through telefaxes, BBL's Vice President conceded that '[t]he Fiddler firm was proposed by Chase [New York],' and was contacted to perform legal services on the basis of this recommendation . . . . Consequently, the present action does not arise out of any alleged New York business solicitations, as would be required for § 302(a)(1) jurisdiction premised on solicitations.")

14

Furthermore, it is also undisputed that the Plaintiffs retained the Defendants to represent them in closing the sale of their Florida property; Mundie performed all of the legal work related to the representation at his Florida offices; and Mundie never physically entered or was required to physically enter New York as part of his representation of the Plaintiffs. See Mayes, 674 F.2d at 185 ("So far as we are aware, no court has extended s 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.").

In addition, the Plaintiffs' claims are primarily predicated on Mundie's alleged failure to request a credit report from Crauss and his alleged failure to forward Crauss a list of furniture that the Plaintiffs wished to exclude from the sale. (See Compl. at ¶¶ 43–54.) According to the complaint, these failures led to Crouss suing the Plaintiffs in Collier County Court, and the Plaintiffs entering into two settlement agreements with Crouss that forced them to forgive a portion of Crouss's mortgage and to pay his attorneys' fees. (See id. at ¶¶ 48–54). Thus, as alleged, the Defendants committed negligent acts from their Florida offices while working on behalf of the Plaintiffs, and proximately caused damages to the Plaintiffs by subjecting them to suit in Florida courts. Thus, the locus of the Plaintiffs' common law claims is Florida, not New York. See Bissonnette, 138 F. Supp. 3d at 624 ("At bottom, here, as in Bank Brussels Lambert, the conduct at issue is the provision of legal services—specifically, the performance of legal research and the rendering of legal advice—from outside of New York.").

The Plaintiffs point to no actions that took place in New York other than the facts that Mundie sent a copy of the retainer agreement from Florida and "numerous communications and

15

documents relative [to the] closing on the property" to Angela Marx's New York address. (See the Pl.'s Opp'n Mem. of Law at 7.)

However, "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983); see also Twine, 746 F. Supp. at 1205 ("The letters and phone calls from defendant Levy to plaintiff were simply necessary communications between defendants and their client.").

Furthermore, as noted above, it is undisputed that the communications between the Plaintiffs and the Defendants did not explicitly reference or seek to invoke the protections of New York law. Rather, the Defendants' communications with the Plaintiffs involved acknowledging the existence of an attorney-client relationship, *see* Compl., Ex. B; and sending the Plaintiffs copies of settlement agreements negotiated by the Defendants in Florida relating to the Collier County Action, *see* Marx Aff. at ¶ 13. "In none of these communications did [the Defendants] project [themselves] into New York to participate in any activities localized in the state or to represent the [Plaintiffs] during any *New York* transactions." Lambert, 171 F.3d at 788 (emphasis added).

The only positive case relied on by the Plaintiffs to support their contention that the above-communications were enough to satisfy the "transaction of business" requirement under Section 302(a)(1) is Fischbarg v. Doucet, 9 N.Y.3d 375, 880 N.E.2d 22 (NY. 2007). There, a New York lawyer sued his two former clients, who were residents of California, for failing to pay him fees in connection with his representation of them in an Oregon action. Id. at 377–78. The New York Court of Appeals found that the clients had "transacted business" in New York

under Section 302(a)(1) because they had engaged in "purposeful activity" by "[seeking] out [the] plaintiff in New York and established an ongoing attorney-client relationship with him." Id. at 380–81, 880 N.E.2d 22. Further, the plaintiffs directly participated in that relationship "via calls, faxes and e-mails that they projected into this state over many months." Id. at 380, 880 N.E.2d 22. The New York Court of Appeals found that these facts were the proper predicates for jurisdiction under Section 302(a)(1). Id. at 384, 880 N.E.2d 22.

By contrast, in this case, there are no allegations suggesting that the Defendants solicited the Plaintiffs in New York. Furthermore, Mundie is a Florida lawyer and performed services for the Plaintiffs at his office in Florida. Lipson v. Birch, 46 F. Supp. 3d 206, 218 (E.D.N.Y. 2014) (Spatt, J) (distinguishing Fischbarg because "[t]he pleadings and affidavits indicate that the Plaintiff contacted and retained Birch and Williamson, two Pennsylvania lawyers, who performed services outside of New York.").

In addition, there is no record establishing continuous communications between the Plaintiffs in New York and the Defendants in Florida regarding the closing or the Collier County Action. Rather, the record reveals that Mundie sent finalized documents to the Plaintiffs for review and signature, and the Plaintiffs returned those documents to the Defendants in Florida without comment. (See Marx Aff. at ¶ 13; Desa Aff. at ¶ 13.) Thus, the scope of the Defendants' representation of the Plaintiffs was far less systematic and continuous than the lawyers' representation of the plaintiff in Fischbarg. See Mirman, 900 F. Supp. 2d at 315 ("Feiner, unlike the defendants in Fischbarg did not 'repeatedly project[ ] [himself] into New York' to advance his own interest . . . . Instead, he simply agreed to serve as an escrow agent for what typically would have been a simple, one-shot transaction.").

For these reasons, the Court finds Fischbarg to be distinguishable from the facts in this case. See Berkshire Capital Grp., LLC v. Palmet Ventures, LLC, 307 F. App'x 479, 481 (2d Cir. 2008) (Summary Order) (distinguishing Fischbarg because "the contract here was to be performed entirely outside of New York . . . . The mere fact that it engaged in some contact with a New York purchaser does not mean that [the defendant] transacted business in New York.").

In sum, construing the allegations in the complaint and the Plaintiffs' affidavits as true, the Court finds it is not plausible to conclude that the Defendants ever intended to invoke the privileges and benefits of New York law in representing the Plaintiffs. See Bissonnette, 138 F. Supp. 3d at 627 ("Put simply, Plaintiff alleges no facts to demonstrate that Defendants aimed any of their business or legal activities at consumers in New York or otherwise purposefully availed themselves of the privilege of this state's laws, such that they should have expected to be haled into court within the state."). Therefore, the Court finds that the Plaintiffs have failed to meet their *prima facie* burden of establishing the personal jurisdiction under Section 302(a)(1) or any other provision of New York law.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Rule 12(b)(2) motion to dismiss the complaint against the Defendants for lack of personal jurisdiction. The Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
September 6, 2016

                                                   /s/ Arthur D. Spatt
                                                     ARTHUR D. SPATT
                                                 United States District Judge